UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SIGMA SWITCHES PLUS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ABC MARKETING, INC.,<br><br>Defendant. | Case No. 3:25-CV-888-CCB-SJF |

**OPINION AND ORDER**

Plaintiff Sigma Switches Plus, Inc. has sued Defendant ABC Marketing, Inc., for patent infringement of Plaintiff's United States Patent Nos. 12,181,127 (the '127 patent); 12,276,396 (the '396 patent); 12,352,411 (the '411 patent); and 12,352,412 (the '412 patent). Plaintiff alleges that Defendant has infringed at least one claim of each patent. Collectively, these patents describe an "LED Light Holder System."[1] (ECF 1-1; 1-2; 1-3; 1-4). This system is designed for Recreational Vehicle interiors and is designed to allow installation of LED lighting strips in the gap between the decorative panels on the ceilings and walls of the RV interior. Two key components of this system are a "retaining strip" fastened to the RV panels and an "elongate light holder" that snaps into the retaining strip on the panel, both concealing the panel gap and providing interior LED lighting.[2] (ECF 1-1 at 17).

[1] All applications are cross referenced together, "claim[ing] the priority of U.S. Provisional Application Ser. No. 63/614, 739, filed Dec. 26, 2023." *See* ECF 1-1 at 13, 1-2 at 13, 1-3 at 18, 1-4 at 17.
[2] These are not the only system components described in the patents, but they are the only ones relevant to the disputed terms addressed in this order.

The parties completed their claim construction briefing on July 6, 2026, in compliance with N.D. Ind. L.P.R. 4-1(e). The Court held a *Markman*[3] hearing on September 8, 2026. The Court now issues its claim construction order.

## STANDARD

"A court construing a patent claim seeks to accord a claim the meaning it would have to a person of ordinary skill in the art at the time of the invention," known as a "POSITA." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (internal quotations omitted) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004)). The "ordinary and customary meaning"[4] of claim terms to one of ordinary skill in the art is the "objective baseline" of claim construction. *Id.* at 1312–13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

Thus, if a term is not the subject of legitimate dispute or a "no construction" ruling resolves the parties' dispute, the term may go to the jury for application of its "plain and ordinary meaning," so long as the jury is not asked to choose between meanings. *See, e.g.*, *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1207 (Fed. Cir. 2010); *Verizon Servs. Corp. v. Cox Fibernet Va., Inc.*, 602 F.3d 1325, 1334 (Fed. Cir. 2010); *Biotec Biologische Naturverpackungen GmbH & Co. KG v. Biocorp, Inc.*, 249 F.3d 1341, 1349 (Fed. Cir. 2001). By contrast, where a term is disputed and its "plain and ordinary meaning" is not readily apparent to a lay reader or does not resolve the parties' dispute,

[3] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) (*en banc*), *aff'd* 517 U.S. 370 (1996)

[4] The parties primarily use the equivalent phrase "plain and ordinary meaning." *See Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1367 (Fed. Cir. 2000).

the court must construe it. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361–62 (Fed. Cir. 2008).

Claim construction begins with consideration of the intrinsic evidence, which includes the patent claims, specification, and prosecution history. *Phillips*, 415 F.3d at 1313. The primary focus is on the claims themselves. *Id.* at 1314. But the patent's specification and prosecution history also informs the inquiry. *Id.* Ultimately, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Id.* at 1316 (citation omitted).

A key rule of claim construction is that although courts look to a term's usage to discover its meaning, they should not arbitrarily limit the term's meaning to a specific usage or example within the patent. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002) (interpreting claims "in light of the specification does not mean that everything expressed in the specification must be read into all the claims."); *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1231 (Fed. Cir. 2005) ("Courts should be careful to avoid "import[ing] limitations from the specification into the claims."). Thus, courts should not "limit[] the claimed invention to preferred embodiments or specific examples in the specification," unless there is a clear statement limiting the scope of the claims in the patent' specification. *Falana v. Kent State Univ.*, 669 F.3d 1349, 1355 (Fed. Cir. 2012).

While intrinsic evidence forms the essential basis for a court's inquiry, it may also consider extrinsic evidence, including dictionaries, learned treatises, and expert

testimony, to assist it in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *See Phillips*, 415 F.3d at 1318. Extrinsic evidence may be used only to supplement the intrinsic evidence—never supplant it. *Id.*

Throughout this process, the strong presumption is that a court aims to discover a term's customary or plain and ordinary meaning. *Phillips*, 415 F.3d at 1313. In some rare cases, a party can overcome this presumption by showing that term language should be interpreted in a way which diverges from its plain and ordinary meaning and uses a specific narrower definition unique to the patent. But there is a high burden for this. The party must show either (1) that the patentee "acted as his own lexicographer" by setting forth a unique definition of the disputed term, *see CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002), or (2) that party "intentionally disclaimed or disavowed" the term's ordinary meaning. *See Aventis Pharms. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013).

Even if a party does not meet this burden, or if the parties merely disagree on what "plain and ordinary meaning" entails, the court must ultimately resolve the dispute over the term's meaning. *See 02 Micro Int'l, Ltd.* 521 F.3d at 1361 (stating that a "determination that a claim term 'needs no construction' or has the 'plain and ordinary meaning' may be inadequate when a term has more than one 'ordinary' meaning or when reliance on a term's 'ordinary' meaning does not resolve the parties' dispute.").

## ANALYSIS

The parties agree on the meaning of nine terms within the patents but disagree on the meaning of four. The Court will now address each of the disputed claim terms.

**1. "Installed position"**

For the term "installed position," Plaintiff has proposed the construction "Wing tips being vertically nearer the opening than in the uninstalled position." (ECF 27 at 2). Defendant rejects this construction and advocates for the plain and ordinary meaning of the phrase. (*Id.*).

There are several problems with Plaintiff's construction. First, it imports the term "vertically," which does not appear anywhere in the patent language of the '126 and '127 patents and is not immediately implicated by it. (ECF 1-1; 1-2). *See Bayer AG. v. Biovail Corp.*, 279 F.3d 1340, 1348 (Fed. Cir. 2002). The phrase "vertical direction" does appear in the '411 and '412 patents, but it is not proper to read one patent's specification into the meaning of another prior patent. (ECF 1-3 at 19; 1-4 at 18). *See Teleflex, Inc.*, 299 F.3d at 1326. Second, even the '411 and '412 patents do not anywhere suggest that "vertical direction" supplies any part of the definition of "installed position." Rather, the patents only clarify that the state of the wing tips when in an installed position is "for clarity . . . measured in a vertical direction" in the patents' description. (ECF 1-3 at 19; 1-4 at 18). Importing this "clarifying" term into the *definition* of "installed position" would be a classic example of "import[ing] limitations from the written description into a claim." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1347 (Fed. Cir. 1998). Third, as used in Plaintiff's proposed construction, the phrase "vertically nearer" is itself ambiguous. *See Actelion Pharms. LTD v. Mylan Pharms. Inc.*, 85 F.4th 1167, 1171 (Fed. Cir. 2023).

"Vertical" is dependent on a frame of reference and orientation, and this construction does not clarify what those are. Finally, Plaintiff does not meet its burden to show that plain and ordinary meaning does not control. Nothing suggests that the patentee "intentionally disclaimed or disavowed" the plain and ordinary meaning of the term "installed position." *See Aventis*, 715 F.3d at 1373. Plaintiff argues that the term "is used consistently throughout the patents-in-suit." (ECF 23 at 8). But consistent use of a term does not demonstrate that it was intended to diverge from plain and ordinary meaning. Plaintiff must show that the patents' use of the term clearly intends to *exclude* meanings which are broader than the proposed construction. *See CCS Fitness*, 288 F.3d 1359, 1366.

Plaintiff's definition also appears to violate the cardinal rule against limiting patent terms to specific iterations described within the patent. *See CollegeNet,* 418 F.3d at 1231. Plaintiff's proposed construction is based on a portion of the patent that states, "Bending the tips of the wings toward the opening of the channel is considered the installed position." (ECF 1-1 at 14).[5] In that context, "installed position" is indeed described in terms of the wing tip's position relative to the opening. But the use across the patent clarifies that this is merely a description of an attribute of the installed position rather than a limiting definition.

A key sign that a term is *not* a limiter is the existence of that term in other parts of the document, referring to different things. *See Teleflex*, 299 F.3d at 1326. Other parts of the patent describe the attributes of "installed position" in different terms. In fact, the

[5] For clarity and readability, all citations to the patent text will omit the internal numerical citations to patent diagram elements.

summary and abstract of the '126 and '127 patents do not use Plaintiff's chosen definition at all. Rather than defining the position in relation to the opening, they define installed position in terms of the wing tips' relation to the "retention barb" which maintains the "elongate light holder" to be "snapped into place within the retaining strip." (ECF 1-1 at 2, 13; 1-2 at 2, 13). The '411 and '412 patents contain similar language within the specification itself. (ECF 1-3 at 20; 1-4 at 19). As the summary of the '126 and '127 patents describes, "The wings are resiliently bendable between an uninstalled position and an installed position. The uninstalled position locates the tips of the wings at a first distance from the retention barb and the installed position locates the tips of the wings at a second distance from the retention barb." (ECF 1-1 at 13; 1-2 at 13) In some contexts, the term "installed position" does not even refer to the wings. For example, the patents describe how the "installed position of the elongate light holder" is when it is "snapped into place within the retaining strip." (ECF 1-1 at 14; 1-2 at 14; 1-3 at 19; 1-4 at 18). Later, use of "installed position of the wings" clarifies that the "installed position" is not inherently a reference to wing position. (ECF 1-1 at 14; 1-2 at 14; 1-3 at 19; 1-4 at 18). If "installed position" solely and exclusively referred to wing position, then the additional clarification "of the wings" would be redundant and superfluous, in addition to improperly limiting the term to a specific iteration. *See SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 429 (Fed. Cir. 2016).

The only thing that pulls all of these attributes together is that they apply when the elongate light holder is *installed* in the plain and ordinary sense of the term. *See Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1250 (Fed. Cir. 1998). ("[t]he

construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). In fact, *only* the plain and ordinary meaning of "installed" covers all permutations described in the patents: when the light strip is installed, then (1): the wings will be "bent[] towards the opening of the channel, (ECF 1-1 at 14); (2) the wing tips will be at a second, farther distance from the "retention barb," (*Id.* at 13); and (3), the light holder will be "snapped into place within the retaining strip"; (*Id.*). This interpretation of the patent is also consistent with the testimony of Defendant's expert. (ECF 24-5 ¶ 18).[6]

Plaintiff objects that Defendant does not provide a definition of the plain and ordinary meaning. But none is needed when this term is so clear, even to users of ordinary English. *See Formax, Inc. v. Alkar-Rapidpak-MP Equip., Inc.*, No. 11-C-298, 2012 WL 3941767, at *2 (E.D. Wis. Sept. 10, 2012) ("district courts routinely decline to interpret claim terms where the terms sought to be defined by a party are readily understood"); *WIMCO, LLC v. Lange Indus., Inc.*, No. 06-CV-3565 PJS/RLE, 2007 WL 4461629, at *4 (D. Minn. Dec. 14, 2007) ("The Court agrees . . . this term does not need to be construed. The words in this term are ordinary words, used in their ordinary sense, and any further definition or paraphrasing would serve no useful purpose.").

[6] Plaintiff argues that it is improper for the Court to consider Defendant's expert testimony of Dr. Klopp because "[T]he extrinsic evidence of record cannot be relied on to change the meaning of the claims." (ECF 25 at 2–8) (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979–81 (Fed. Cir. 1995) (en banc)). But Defendant does not argue that Dr. Klopp's testimony supplants the intrinsic meaning of the claims. Therefore, Dr. Klopp's testimony is not inadmissible on that basis. In any case, Defendant's argument does not appear to rest primarily on Dr. Klopp's testimony, but rather on the plain and ordinary meaning of the intrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

Therefore, the Court construes the term "installed position" as best understood with reference to its plain and ordinary meaning without further construction or definition.[7]

**2. "Uninstalled position"**

Plaintiff argues that a specific construction of the term "uninstalled position" is also needed. For this construction, Plaintiff proposes essentially the inverse of their definition for "installed position": "a position locating the wing tips vertically farther from the opening than in the installed position." (ECF 27 at 3).

This proposal suffers from many of the same infirmities as Plaintiff's "installed position" construction. It uses a word that is completely absent from two of the four patents ("vertical"), introduces ambiguity, and limits the term to only some of the senses in which it appears in the patent. *See supra* pages 5–9. The patents' language makes clear that the "uninstalled position" is merely the state of the elongate light holder being "not installed." (ECF 1-1) ("The uninstalled position . . . corresponds to the free state of the elongate light holder"); (*Id.*) ("The uninstalled position of the wings is the free state of the wings"). Thus, the definition of "uninstalled position" is easily discernable. Moreover, because "uninstalled position" is defined in negative rather than positive terms, an attempt to create a single "construction" for it would both introduce

[7] The Court is not opposed to issuing a limiting definition based on dictionary definitions of "install." *See, e.g.*, *Install*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ("to establish in an indicated place, condition, or status: to set up for use or service"); *Installation*, Webster's Third New International Dictionary (2002) ("setting up or placing in position for service or use"). *See CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002) ("the meaning of a claim term may come from a 'relevant dictionary' so long as the definition does not fly 'in the face of the patent disclosure'" (quoting *Kegel Co. v. AMF Bowling, Inc.*, 127 F.3d 1420, 1427 (Fed. Cir. 1997))). But considering the extremely common use and well-understood meaning of this word, the Court does not find that such an instruction is necessary or proper at this time.

confusion and improperly limit the term. *See CollegeNet,* 418 F.3d at 1231. Rather, the "uninstalled position" is *any* position which is *not* the "installed position." This conclusion is also supported by Defendant's expert. (24-5 ¶ 18). Therefore, the Court construes the term "uninstalled position" as best understood with reference to its plain and ordinary meaning without further construction or definition.

**3. "Bias"**

The parties also dispute the construction of the term "bias." Here, Plaintiff requests the construction "A bending force in a particular direction." (ECF 27 at 2). Defendant argues that this construction is "unhelpful and irrelevant" and would "improperly import limitations from the specification." (ECF 24 at 17).

Defendant's first objection is that the proposed definition is in the form of a noun phrase rather than a verb, which is inconsistent with the verbal usage that appears throughout disputed claims. Defendant argues that inserting Plaintiff's proposed construction into the patent language "wings being biased away from said opening" would lead to the nonsensical phrase "wings being a bending force in a particular direction." (ECF 26 at 7). This issue is easy to resolve: when "bias" is used as a verb, the Court proposes that the noun phrase "a force in a particular direction" is converted to a verb phrase "forces in a particular direction" (when active) and "forced in a particular direction" (when passive). Inserting this construction into Defendant's chosen phrase would read "wings being forced in a particular direction away from said opening." This is certainly not nonsensical and is consistent with the patents' use of the term. This should resolve Defendant's objections regarding the "nonsensical" nature of using a

noun phrase to define a verb, without changing the underlying meaning of Plaintiff's proposed construction of the term "bias."

Defendant also objects to Plaintiff's "bending force," language, arguing that this could exclude other force directions, such as "straight line (normal) forces." (ECF 24 at 17). This objection can be resolved by simply removing the additional term "bending." That term is not necessary or proper, because the patent defines the relative direction of forces when it uses the term "bias." *See, e.g.*, (ECF 1-1 at 14)("biased *toward the retention barb*"; "biased tension *against the ceiling boards*"; "biased *against the nubs*") (emphasis added). If a specific use of the word "bias" implies a "bending force," it will be clear from context.

In determining whether this definition best corresponds to the plain and ordinary meaning, the extrinsic evidence is rather indeterminate.[8] Even so, the Court need not rely on the extrinsic evidence, because the intrinsic evidence of the word's usage within the patent itself makes clear that "bias" is best understood as "a force in a particular direction" (in the noun form) and "forced/forces in a particular direction" (in the verb form). The Court construes the term according to that understanding.

---

[8] The *McGraw-Hill Dictionary of Scientific and Technical Terms* does not provide a single definition for "bias," instead providing a variety of field-specific definitions, some of which have rather different definitions: *Compare* Bias [Analytic Chemistry], McGraw-Hill Dictionary of Scientific and Technical Terms at 231 (6th edition 2003) ("A systematic error occurring in a chemical measurement") *with id.*, Bias [Electrical] ("A direct-current voltage used . . . to secure desired time spacing of transitions"). Still, some do appear consistent with the Court's definition, albeit applied to a different field than the other here. *See id.*, Bias [Electrical] ("The restraint of a relay armature by spring tension . . . The force applied to a relay to hold it in a given position"). *See also* Bias, Oxford English Dictionary, https://www.oed.com/dictionary/bias_n (last visited Sept. 8, 2026) (defining "bias" in definition 5.b. (mechanics) as "[a] tendency to move in a certain direction or way, given to an armature, pointer, etc. (e.g., by a spring, weight, or magnetic field)).

**4. "Wings being biased away from said opening"**

The parties also dispute the construction of the phrase "wings being biased away from said opening." Both parties propose definitions, with Plaintiff proposing the construction "Force driving wings away from opening," while Defendant proposes the addition of "internal," making the construction "Internal Force driving wings away from opening." (ECF 27 at 4).

Plaintiff argues that the word "internal" does not appear anywhere in the claim and would be an improper limitation. The Court agrees. Defendant argues that the language elsewhere in the patent describing how the wings "are prevented from [seeking their uninstalled position] by contact with the ceiling boards" clearly establishes that the bending force on the wings must originate inside the wings rather than from an external force. (ECF 1-1 at 14; 24 at 15). But it's unclear how this supports Defendant's argument—that sentence plausibly suggests that the *external* force of the ceiling boards is biasing the wings *away* from their uninstalled position.

But regardless, the court finds that no specific construction is needed here. It is not even clear that this phrase constitutes a "term" in the sense of being a repeatedly used and defined unit of meaning. For example, the phrase only appears three times in each patent, and even then it is contained within a larger block of repeated text. Instead, it appears to be a simple grammatical construction which uses the already-construed term "bias." Moreover, similar to the debate over "bias," removing Defendant's insertions of directionality from their proposed definition resolves the debate over whether the term contains implied directionality. Any directionality will be apparent

from context. Therefore, the Court construes the phrase "wings being biased away from said opening" as best understood with reference to its plain and ordinary meaning without further construction or definition.

## CONCLUSION

For the reasons stated above, the Court **ADOPTS** the following definitions for the disputed terms in the patent as follows: The terms "Installed position," "uninstalled position," and "wings being biased away from said opening" will be given their plain and ordinary meaning with no further definition. The term "bias" will be defined as "a force in a particular direction" (when used as a noun) and "forces/forced in a particular direction" (when used as a verb).

This order triggers the deadlines set in N.D. Ind. L.P.R. 5-1 and 6-1. Thus, Plaintiff must serve Defendant its final infringement contentions within 28 days after this order is entered. Defendant's invalidity contentions are due within 21 days thereafter. Opening expert reports on issues the proponent will bear the burden of proof on at trial are due within 28 days after receiving the final invalidity contentions.

SO ORDERED on September 17, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT